2001 ND 120

**STATE of North Dakota, Plaintiff
and Appellee,**

v.

**Eugene SCHNEEWEISS, Defendant
and Appellant.**

No. 20000295.

Supreme Court of North Dakota.

July 10, 2001.

Rehearing Denied Aug. 30, 2001.

Allen M. Koppy (argued), State's Attorney, and Ladd R. Erickson (on brief), Assistant State's Attorney, Mandan, ND, for plaintiff and appellee.

Wayne D. Goter, Goter Law Office, Bismarck, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Eugene Schneeweiss appeals from the judgment of conviction based on a jury verdict of guilty for driving a vehicle while under the influence of intoxicating liquor. Schneeweiss claims the trial court improperly denied him assistance of counsel in his defense. We affirm.

I

[¶ 2] On December 17, 1999, Schneeweiss was arrested for driving a motor vehicle while under the influence of intoxicating liquor. At his initial appearance, the trial court advised Schneeweiss of his right to court-appointed counsel if Schneeweiss was indigent and asked if Schneeweiss was going to hire his own attorney. Schneeweiss replied that he already had talked to an attorney and was going to hire his own. However, on January 18, 2000, Schneeweiss submitted an application for a court-appointed attorney. The trial court denied the request because Schneeweiss was not indigent, as he had no dependents and was earning $1,200 per month, which exceeds the guideline requirement for appointed counsel. Schneeweiss appeared pro se at his pretrial conference and requested a jury trial.

[¶ 3] On March 13, 2000, Schneeweiss reapplied for a court-appointed attorney, this time claiming no income. The trial court appointed an attorney and continued the trial date. One day before the rescheduled trial, Schneeweiss requested a new court-appointed attorney after threatening a malpractice suit and demanding the attorney to withdraw for allegedly failing to conduct sufficient discovery, failing to call requested witnesses, and refusing to file perjury charges against the arresting officer. The attorney filed a motion to withdraw, stating much of the requested discovery was irrelevant and undiscoverable, the requested witnesses were in jail and had never been arrested by the officer so would not be able to prove the officer improperly arrested Schneeweiss, and the attorney refused to be "a tool for [Schneeweiss] to exact his retribution" against the arresting officer. At a hearing on the motion to withdraw, the State requested placing conditions on Schneeweiss's request for a court-appointed attorney as sanctions for harassing attorneys and delaying process. The trial court granted the motion to withdraw, stating Schneeweiss would be allowed one additional appointed counsel, and rescheduled the trial a second time.

[¶ 4] Subsequently, the newly appointed counsel asked the trial court why Schneeweiss, who was working, qualified for appointed counsel. Schneeweiss had not notified the trial court he was working, although the application for court-appointed counsel required notifying the judge of any changes occurring after filing the ap-

plication. The trial court scheduled an Order to Show Cause to determine if Schneeweiss was still eligible for court-appointed counsel. At a hearing on October 9, 2000, which was 10 days before trial, the trial court determined Schneeweiss's income exceeded the amount allowed by the guidelines for appointed counsel. The trial court vacated the appointment of counsel and affirmed the trial date of October 19, 2000.

[¶ 5] On October 10, 2000, the trial court administrator received a letter from Schneeweiss, dated September 6, 2000, alleging harassment by the state's attorney to "stall this case beyond the limits set do[wn] for a speedy trial." Schneeweiss stated he had a right to a speedy trial, but the court-appointed attorneys did not file requested papers so as "to stall this case to continue to terrorize me." The court administrator immediately replied that the trial would take place as scheduled on October 19, 2000, and suggested Schneeweiss take the necessary steps to prepare his case. On October 13, 2000, Schneeweiss again applied for appointed counsel, claiming he was temporarily unemployed and reporting no monthly income. The trial court indicated Schneeweiss was not indigent and did not approve his application. Schneeweiss defended his case pro se; the jury found him guilty. Schneeweiss appeals, arguing he improperly was denied assistance of counsel in his defense.

## II

[¶ 6] The right to counsel in a criminal case is mandated both by the North Dakota Constitution and the Sixth Amendment of the United States Constitution. *State v. DuPaul*, 527 N.W.2d 238, 240 (N.D.1995); N.D. Const. art. I, § 12 ("In criminal prosecutions in any court whatever, the party accused shall have the right to ... appear and defend in person and with counsel."); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to ... have the assistance of counsel for his defense.").

[¶ 7] Indigent defendants have the right to counsel appointed by the court, under N.D.R.Crim.P. 44(a), which provides:

Absent a knowing and intelligent waiver, every indigent defendant is entitled to have counsel appointed at public expense to represent the defendant at every stage of the proceedings from initial appearance before a magistrate through appeal in the courts of this state in all felony cases ... [and] in all non-felony cases unless the magistrate has determined that sentence upon conviction will not include imprisonment. The court shall appoint counsel to represent a defendant at the defendant's expense if the defendant is unable to secure the assistance of counsel and is not indigent.

The right to appointed counsel is a limited right, not an absolute right. *DuPaul*, 527 N.W.2d at 240–41. We have cautioned there is no legal reason to appoint counsel for defendants who can afford to obtain their own counsel. *Id.* at 241. On review of a trial court's denial of a request for appointed counsel, we inquire whether the trial court acted arbitrarily, unconscionably, or unreasonably. *Id.* at 240.

## III

[¶ 8] Schneeweiss argues because the trial court vacated the appointment of his second appointed counsel just 10 days before trial, the trial court improperly denied Schneeweiss the assistance of counsel in his defense. The trial court vacated the appointment of counsel due to Schneeweiss's reported monthly income, yet Schneeweiss asserts the trial court (1) failed to consider whether he had the present assets to retain an attorney, (2) re-

fused to appoint substitute counsel, (3) refused to continue the trial to allow Schneeweiss additional time to prepare his defense, and (4) should have allowed the second appointed counsel to continue and ordered Schneeweiss to pay for counsel after determining Schneeweiss was not indigent.

1

[¶ 9] Schneeweiss contends the trial court improperly made no inquiry into whether he had the present resources to pay the retainer necessary to hire an attorney to represent him at a jury trial, notwithstanding his reported monthly income.

[¶ 10] The guidelines establish eligibility for indigent defense services for an individual with no dependents at a maximum annual gross income of $10,438. N.D. Legal Counsel for Indigents Comm'n, N.D. Sup.Ct., *Indigent Defense Procedures and Guidelines*, Dec. 1995, at 1.4 (rev.Apr. 2000). Defendants bear the burden of proving they are indigent and qualify for appointed counsel. *State v. DuPaul*, 527 N.W.2d 238, 242 (N.D.1995). In *DuPaul*, we concluded the trial court did not arbitrarily or unreasonably deny counsel to the defendant when he failed to prove his indigency. *Id.* We reasoned, "Without adequate proof of indigency, the court did not act unreasonably in denying appointed counsel even if DuPaul truly believed he was too poor to hire his own lawyer." *Id.*

[¶ 11] Similarly, we affirmed a trial court's revocation of a defendant's indigency status after first determining him to be indigent and appointing counsel for representation in all matters pertaining to the case. *State v. Fontaine*, 382 N.W.2d 374, 375–76 (N.D.1986). Three months after appointment of counsel, the defendant received social security benefits which elevated his income above the guideline amount required to qualify for public-paid defense services. *Id.* We concluded the defendant was not prejudiced by the revocation of his indigency status, as he did not show he was unduly burdened by the revocation or that the flow of court proceedings was disrupted. *Id.* at 376.

[¶ 12] On January 18, 2000, Schneeweiss submitted his first application for appointed defense services, indicating he had no dependents and reporting a monthly income of $1,200. This monthly income results in an annual income of $14,400, which is $4,000 over the guideline amount required for indigent defense services eligibility. Thus, the trial court properly disapproved of Schneeweiss's application on the basis that he was not indigent. Two months later, on March 13, 2000, Schneeweiss again applied for appointed counsel, this time reporting no income. The trial court approved his application and appointed counsel. However, the trial court later issued an Order to Show Cause, as Schneeweiss informed counsel he was now gainfully employed and failed to respond to the court's request for disclosure of current financial information regarding such employment. After a hearing, the trial court found Schneeweiss's earned income exceeded the guideline requirements and vacated the appointment of counsel. A mere three days later, Schneeweiss again reapplied for appointed counsel, stating he was temporarily unemployed and reporting no income. The trial court denied his application, indicating Schneeweiss was not indigent.

[¶ 13] Our review of the record demonstrates the trial court did not act arbitrarily, unconscionably, or unreasonably when determining Schneeweiss was not indigent. Schneeweiss failed to carry his burden of proving his indigency to the trial court. We conclude the trial court did not abuse

its discretion by denying Schneeweiss's application for appointed counsel.

### 2

[¶ 14] Schneeweiss claims because the trial court vacated the appointment of his second appointed counsel just 10 days before trial, without appointing a substitute counsel, Schneeweiss was improperly denied the assistance of counsel in his defense.

[¶ 15] Substitution of appointed counsel is committed to the trial court's sound discretion. *State v. Harmon*, 1997 ND 233, ¶ 12, 575 N.W.2d 635. A trial court does not abuse its discretion by refusing to substitute appointed counsel, unless there is a showing of good cause for the substitution. *Id.* And a trial court has no duty to appoint specific counsel or to continually seek new substitute counsel for a capricious and difficult defendant. *Id.*

[¶ 16] The trial court issued an Order to Show Cause because Schneeweiss failed to respond to requests for disclosure of his financial information regarding his current employment. At the hearing, Schneeweiss affirmed under oath his employment and earning capacity of $1,200 per month and indicated he supported no one other than himself. Thus, we conclude Schneeweiss failed to show good cause for substitution of appointed counsel, and the trial court did not abuse its discretion by refusing to substitute counsel.

### 3

[¶ 17] Schneeweiss argues he asked for a continuance of trial, after his appointed counsel was terminated, so Schneeweiss could prepare his own defense. Schneeweiss contends the trial court denied his request for a continuance.

[¶ 18] When a defendant seeks a continuance to change lawyers, this right must be carefully balanced against the public interest in the orderly administration of justice. *State v. Wicks*, 1998 ND 76, ¶ 26, 576 N.W.2d 518. In such cases, the trial court has the discretion to determine whether to grant a continuance. *Id.* In exercising its discretion, the trial court may consider the time required for trial preparation and the diligence of the moving party. *Id.* at ¶ 27. In *Wicks*, we concluded the trial court denied the defendant's right to counsel by allowing appointed counsel to withdraw on the very day of trial, thus forcing the defendant to proceed pro se. *Id.* at ¶¶ 28–29.

[¶ 19] A close reading of the record indicates Schneeweiss did not request a continuance of the trial to prepare his own defense. In fact, just the opposite occurred, as Schneeweiss asserted his right to a speedy trial in his letter received by the trial court on October 10, 2000. The letter claimed appointed counsel and the state's attorney conspired to terrorize Schneeweiss and "to stall this case beyond the limits set do[wn] for a speedy trial." The district court administrator replied immediately, indicating the trial *"will* take place as scheduled" on October 19, 2000. The court administrator further admonished Schneeweiss to "take the necessary steps to prepare your case." The trial court's Order to Show Cause affirmed the trial date would "not be continued for substitution of legal counsel." Moreover, the transcript of the hearing to vacate appointed counsel indicates the trial court informed Schneeweiss of the trial date and stated: "That grants you ten days to secure counsel or in the alternative represent yourself." This situation is a far cry from that of the defendant whose counsel was excused on the very day of trial. *Wicks*, 1998 ND 76, ¶ 28, 576 N.W.2d 518.

[¶ 20] We conclude the trial court did not abuse its discretion in failing to continue the trial date, as Schneeweiss did not request a continuance and had 10 days to either hire an attorney or prepare his own defense.

4

[¶ 21] Schneeweiss asserts after the trial court found he was not indigent, the court should have allowed the second appointed counsel to continue his representation and ordered Schneeweiss to pay for the attorney at private expense.

■ [¶ 22] Under N.D.R.Crim.P. 44(a), provisions are made for appointment of counsel at the private expense of the defendant, with two conditions: "The court shall appoint counsel to represent a defendant at the defendant's expense if the defendant is unable to secure the assistance of counsel and is not indigent." Thus, even someone who is not indigent is entitled to appointed counsel, if unable to find an attorney; but such appointment must be at the party's own expense, not the expense of the public. *State v. DuPaul*, 527 N.W.2d 238, 242 (N.D.1995). In *DuPaul*, we suggested that while the defendant was not entitled to publically funded appointed counsel, because he did not prove his indigency, yet he may have been entitled to court-appointed counsel at his own expense, only "if he was otherwise unable to locate [counsel] to assist him." *Id.*

■ [¶ 23] Schneeweiss contradicts himself, first by stating he had no assets available to retain an attorney, notwithstanding his monthly income, and then by stating the trial court should have required him to privately pay for an appointed counsel. Moreover, our review of the record does not disclose any unsuccessful efforts of Schneeweiss to obtain private counsel. *See DuPaul*, 527 N.W.2d at 242

(refusing to appoint counsel at the defendant's own expense because he wanted a "free" attorney without any effort to prove he needed one).

[¶ 24] We conclude the trial court did not err in failing to allow appointed counsel to continue representation and to order Schneeweiss to privately pay, after determining he was not indigent, because Schneeweiss did not demonstrate he was otherwise unable to secure the assistance of counsel.

IV

[¶ 25] Although Schneeweiss ultimately proceeded pro se, he argues he desired the assistance of counsel at trial, or he would not have made his last application for court-appointed counsel three days before the trial. Schneeweiss insists the trial court was "grossly unfair" in demanding him to acquire complete mastery of the rules of evidence and procedure in 10 days and in threatening him with contempt of court if he attempted to introduce evidence the trial court found to be irrelevant. The State resists this argument and argues Schneeweiss's conduct constituted a knowing and intelligent functional waiver of counsel. We agree.

■ [¶ 26] Criminal defendants who proceed pro se must voluntarily, knowingly, and intelligently relinquish the benefits of counsel. *State v. Dvorak*, 2000 ND 6, ¶ 10, 604 N.W.2d 445. In order to competently and intelligently choose self-representation, defendants need not have the skill and experience of counsel but should be aware of the dangers and disadvantages of appearing pro se, so the record establishes the choice is made "with eyes open." *Id.* (citing *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). To ensure the defendant's eyes were open when choosing self-representation, we have applied a two-part

test to analyze the defendant's waiver of the right to counsel: (1) whether the waiver was voluntary, and (2) whether the waiver was knowing and intelligent. *Dvorak*, at ¶ 12.

1

[¶ 27] Under the first part of the test for waiver of the right to counsel, we have recognized a defendant need not make unequivocal statements indicating a voluntary desire to proceed pro se; rather, the defendant's conduct may be the functional equivalent of a voluntary waiver of the right to counsel. *State v. Harmon*, 1997 ND 233, ¶¶ 15, 21, 575 N.W.2d 635. We have concluded conduct such as continued requests by a defendant for a new appointed counsel, after the trial court clearly denied an initial request, was the functional equivalent of a voluntary waiver of right to counsel. *See, e.g., City of Fargo v. Rockwell*, 1999 ND 125, ¶ 14, 597 N.W.2d 406; *Harmon*, at ¶ 21. We have also determined a manipulative pattern of obstructing the legal process is the functional equivalent of a voluntary waiver of right to counsel. *State v. Dvorak*, 2000 ND 6, ¶ 15, 604 N.W.2d 445.

[¶ 28] Here, Schneeweiss indicated at his initial appearance that he had already talked to an attorney and was going to hire his own. Schneeweiss later requested appointed counsel, but the trial court denied his request because Schneeweiss reported a monthly income of $1,200, which exceeded the guidelines. Schneeweiss appeared pro se at his pretrial conference, but later reapplied for appointed counsel, claiming no income. The trial court appointed counsel and continued the trial date. However, one day before the rescheduled trial, Schneeweiss requested a new appointed counsel, which the trial court granted, admonishing Schneeweiss that he would be allowed only one addi-

tional appointed counsel. The court rescheduled the trial a second time. Because Schneeweiss failed to report his changed employment status and current financial information to the court, the trial court vacated the appointment of counsel 10 days before the trial. The court stated the trial would not be continued for substitution of counsel, and once again turned down Schneeweiss's third application for indigent services which he submitted three days after he informed the trial court he was employed again.

[¶ 29] The record provides evidence of Schneeweiss's pattern of obstructing the legal process by his conduct: repeatedly requesting appointed counsel after his request was denied, manipulating his income when applying for indigent services, failing to report his changed employment status to the court, and refusing to respond to the trial court's request for current financial information from his gainful employment. Although Schneeweiss claims he desired the assistance of counsel, or he would not have made his last application for court-appointed counsel, we conclude Schneeweiss's conduct constitutes the functional equivalent of a voluntary waiver of his right to counsel.

2

[¶ 30] Under the second part of the test for waiver of the right to counsel, we analyze the record and the facts and circumstances of each case to determine whether the functional waiver was knowing and intelligent. *State v. Dvorak*, 2000 ND 6, ¶ 16, 604 N.W.2d 445. For a defendant to knowingly and intelligently waive the right to counsel and opt to proceed pro se, the defendant must be aware of the dangers and disadvantages of self-representation so the record establishes the defendant knows the choice is made with eyes open. *Id.*

[¶ 31] Early in the proceedings, when Schneeweiss appeared without counsel at his pretrial conference, the trial court admonished him: "Do you understand in a course of trial by jury that I'll hold you to the Rules of Criminal Procedure and Rules of Evidence, and I'll expect that you be conversant with the same?" Again at the hearing vacating court-appointed counsel, the trial court affirmed the trial date and informed Schneeweiss:

> That grants you ten days to secure counsel or in the alternative represent yourself.

> Let me assure you if you choose to represent yourself, I'll hold you to the North Dakota Rules of Criminal Procedure, including all rules applicable to jury selection. Do you understand?

When Schneeweiss answered in the affirmative and asked the court if he could subpoena witnesses, the trial court stated:

> You are entitled to that process. I caution you, however, that anyone who is subpoenaed must have factual information that is relevant to your case; and if you exercise it towards anyone who does not, as someone who is exercising that authority I reserve the contempt powers of the court. And I don't mean that as an intimidation. All I'm saying, I don't want some citizen to be subpoenaed to sit in the courtroom to find out that they have no factual information to offer at the time of trial. Do you understand?

[¶ 32] Our review of the record indicates Schneeweiss understood the dangers and disadvantages of self-representation and proceeded with eyes open. We conclude Schneeweiss knowingly and intelligently waived his right to counsel.

## V

[¶ 33] In summary, Schneeweiss was not denied assistance of counsel, but rather he failed to prove his indigency, failed to request a continuance of trial, and failed to show he was unable to obtain his own attorney in the 10 days before trial. Schneeweiss voluntarily proceeded pro se, functionally waiving his right to counsel, fully aware of the dangers and disadvantages of self-representation. The judgment of conviction is affirmed.

[¶ 34] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, WILLIAM A. NEUMANN, DALE V. SANDSTROM, JJ., concur.